No. 639 July 8, 2026 301

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CONTINENTAL CASUALTY COMPANY
and Transportation Insurance Company,
*Plaintiffs-Respondents,*

*v.*

ARGONAUT INSURANCE COMPANY
et al.,
*Defendants,*

*and*

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
*Defendant-Respondent,*

*and*

EMPLOYERS INSURANCE COMPANY OF WAUSAU,
*Defendant-Appellant.*

INSURANCE COMPANY OF NORTH AMERICA,
*Third-Party Plaintiff,*

*v.*

ARGONAUT INSURANCE COMPANY
et al.,
*Third-Party Defendants.*

Multnomah County Circuit Court
16CV14319; A176763

David F. Rees, Judge.

Argued and submitted March 5, 2026.

David C. Linder (Minnesota) argued the cause for appellant. Also on the briefs were Larson • King, LLP (Minnesota) and Thomas W. Sondag, Carter M. Mann, and Lane Powell PC.

Laurie J. Hepler (California) argued the cause for respondents Continental Casualty Company and Transportation Insurance Company. Also on the brief were Rachel A. Beyda and Greines, Martin, Stein & Richland LLP (California)

and Lawrence Gottlieb, Jeremy R. Schulze, H. Matthew Munson, and Betts Patterson & Mines PS (Washington).

Thomas W. Brown, Julie A. Smith, and Cosgrave Vergeer Kester LLP; Stephen R. Wong, Kenneth H. Sumner, and Sinnott, Puebla, Campagne & Curet APLC (California); Timothy R. Macdonald, Robert Reeves Anderson, and Arnold & Porter Kaye Scholer LLP (Colorado); and William C. Perdue, Samuel I. Ferenc, and Arnold & Porter Kaye Scholer LLP (Washington, D.C.) filed the brief for respondent Insurance Company of the State of Pennsylvania.

Louis A. Ferreira, Cameron Zangenehzadeh, and Stoel Rives LLP, filed the brief *amicus curiae* for Schnitzer Steel Industries, Inc., and MMGL, LLC.

Before Kamins, Presiding Judge, Egan, Judge, and DeVore, Senior Judge.

DeVORE, S. J.

Reversed in part; affirmed in part; and remanded for reconsideration of allocation.

Kamins, J., dissenting.

**DeVORE, S. J.**

This case is a contribution action by plaintiffs Continental Casualty Company and Transportation Insurance Company (collectively, Continental) that arises under the Oregon Environmental Cleanup Assistance Act (OECAA) in the context of the Portland Harbor Superfund Site cleanup. The case is on remand to us from the Oregon Supreme Court. *Continental Casualty Co. v. Argonaut Ins. Co.*, 373 Or 389, 567 P3d 1059, *adh'd to as modified on recons*, 374 Or 144, 574 P3d 476 (2025) (*Continental Casualty II*), to address Employers Insurance Company of Wausau's (Wausau) remaining assignments of error. To continue, we recount portions of the prior proceedings where relevant to each of the remaining assignments of error. We reverse in part, affirm in part, and remand for reconsideration of the allocation to be made in contribution.

## I.   RESOLVED ISSUE

Schnitzer Steel Industries, Inc. (SSI), and MMGL Corp (formerly Schnitzer Investment Corp) (SIC) (collectively "Schnitzer") were named as potentially liable parties for cleanup of the Portland Harbor. Schnitzer designated Continental as the "targeted" insurer under ORS 465.480(3)(b). That statute permits an insured to choose a more significant general liability insurer among others to respond to a loss to the extent of its policies. In 2018, Continental paid the defense costs of Schnitzer for the Portland Harbor claims and then, under the OECAA, sought contribution from Schnitzer's other insurers, including Wausau.

In our original opinion on Wausau's appeal, we held that the trial court had erred in denying Wausau's motion to dismiss Continental's claim for contribution because the claim was barred by ORS 465.480(4)(a). *Continental Casualty Co. v. Argonaut Ins. Co. (A176763)*, 331 Or App 38, 51, 545 P3d 173 (2024) (*Continental Casualty I*). As relevant, ORS 465.480(4)(a) provides:

> "An insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim."

Under that statute, we held that Wausau's settlement with its insured Schnitzer barred Continental's claim for contribution. Because we agreed with Wausau's first assignment of error, we did not reach the other assignments. *Continental Casualty I*, 331 Or App at 51.

On Continental's petition for review, the Supreme Court reversed our opinion and reinstated the trial court's ruling rejecting Wausau's motion to dismiss. *Continental Casualty II*, 373 Or at 404. The Supreme Court focused on the meaning of the phrase "the environmental claim" in ORS 465.480(4)(a), which, as noted, provides that an insurer that has paid all or part of an environmental claim may seek contribution from another insurer that has coverage and that has not made a good-faith settlement with the insured "regarding the environmental claim." *Id.* at 400-02. The Supreme Court determined that

> "Schnitzer's settlement with Wausau was not a settlement of *the* environmental claim that Continental, as the targeted insurer, had already paid. Thus, it is not a settlement that extinguishes Continental's right to contribution."

*Id.* at 403 (emphasis in original). The Supreme Court explained:

> "[T]o the extent that Schnitzer recovered the defense costs that had been reduced to judgment against Continental, Schnitzer had no remaining claim for those costs against Wausau that it could settle."

*Id.* at 403-04. The Supreme Court concluded:

> "Thus, Wausau has not 'entered into a settlement with the insured regarding the environmental claim,' and Continental's right to contribution is not barred. The Court of Appeals' contrary conclusion was in error."

*Id.* at 404 (paraphrasing ORS 465.480(4)(a)). The Supreme Court remanded the case to us for consideration of the four remaining assignments of error.

Those assignments ask: (2) whether the recoverable costs allocated among insurers should include (a) attorney fees awarded under ORS 742.061 in favor of Schnitzer against Continental in the preceding policy claim or

(b) prejudgment interest under ORS 82.010 on unpaid attorney fees incurred in defense of the underlying environmental claim; (3) whether a fee limitation under ORS 465.483(3)(a) on the rates of independent counsel applied to the fees of nonlocal attorneys who defended the environmental claim; (4) whether certain Wausau policies contained an aggregate liability limit; and (5) whether other Wausau policies should be excluded from the contribution calculations because their liability limits had been exhausted.

## II.   SECOND ISSUE

Did the trial court err, when including among the "recoverable costs" that are allocated in contribution under ORS 465.480(5), (a) Continental's debt for Schnitzer's attorney fees under ORS 742.061 in the policy claim against Continental and (b) Continental's debt for prejudgment interest under ORS 82.010 on unpaid attorney fees from defense of the underlying environmental claim?

A.   *Attorney Fees Under ORS 742.061*

In the underlying contract claim on Continental's policy, the federal court had awarded Schnitzer $3,756,037 in attorney fees to be paid by Continental, not under the terms of its policy promising a defense of the environmental claim, but under ORS 742.061 for Continental's failure to have settled within six months of the claim on its policy.[1] In this contribution case, the trial court deemed those statutory fees to be properly included as the recoverable costs under ORS 465.480(5) so as to be apportioned among insurers. The trial court did not engage in statutory analysis of terms, but the court did observe that "[w]hen the Legislature drafted the OECAA, it was certainly aware of an insured's ability to recover attorney fees under ORS 742.061." For that reason, the trial court declared that the legislature must have intended to include statutory fees as recoverable costs under ORS 465.480(5). Because claims on policies may vary,

---

[1] ORS 742.061(1) provides, in relevant part:

"[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

the trial court assumed it was the judge's task to decide "whether it is fair to apportion these costs to other insurers."

In the policy claim against Continental, the problem had been a failure to pay the full amount of the bills of Bingham McCutchen, Schnitzer's California defense attorneys, due to a dispute over whether the California firm had billed at rates that were more than were reasonable and necessary in defense of the local environmental claim. Other insurers, including Wausau, had not been made defendants in Schnitzer's action against Continental. Nevertheless, because the nonparty insurers privately shared Continental's opinion that the Bingham fees were too high, the trial court concluded it was "fair" to impose Continental's liability for Schnitzer's litigation with Continental on other insurers, specifically Wausau, under ORS 465.480(5).

We review the trial court's interpretation of ORS 465.480(5) as a question of law. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our interpretation of the statute is governed by a three-part test. *Id*. The first and most important step is an examination of the text and context of the statute itself. *Id*. at 171. That is followed by a consideration of the legislative history if it is useful for our analysis. *Id*. at 172. If the legislature's intent remains unclear after examining text, context, and legislative history, we may resort to general maxims of statutory construction to aid in resolving the uncertainty, if any. *Id*.; *State v. Moore*, 319 Or App 136, 140, 510 P3d 907, *rev den*, 370 Or 303 (2022).

Both parties agree that the term "recoverable costs" in ORS 465.480(5) is not defined by statute. Neither party offers legislative history on point, and we are aware of none.

Wausau challenges the trial court's interpretation of ORS 465.480(5), relying on statutory context. Citing several other provisions of the OECAA, Wausau contends that the term "recoverable costs," which may be allocated under ORS 465.480(5), refers to the defense costs of the claim against the insured and the indemnity costs from payment of damages that an insured owes. Wausau reasons that defense and indemnity costs—referenced in ORS 465.480(5) and elsewhere—are what policies pay; that insurers' policies are

parallel contractual obligations to their common insured; and it is the commonality of parallel policies that gives rise to the contribution action under the OECAA. In other words, what the insurers collectively owe the insured under their policies is what the term "recoverable costs" means.

Continental supports the trial court's conclusion by referring to a general sense of purpose, albeit with less specificity, but with an appeal to equity. Taking in the scope of the OECAA, Continental argues that, as a targeted insurer, it had a duty to pay "all sums" due under its own policies and was reassured of its prospect to seek contribution later from other insurers; that it was equitable to include sums Continental owed under ORS 742.061 in the action on its policy; that inclusion of those fees in the contribution calculation is compelling when the other insurers happened to have agreed with Continental about unreasonably high attorney fees; and that the trial judge should have discretion to determine what are "recoverable costs" under ORS 465.480(5).

Our construction of that statute begins with one of the express definitions in the OECAA, considers related subsections, and finds meaning with a synonymous phrase within ORS 465.480(5) itself. First, ORS 465.475(1) provides:

> "'Environmental claim' means a claim for defense or indemnity submitted under a general liability insurance policy by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water."

In so saying, the OECAA defines an "environmental claim" in terms of the demand for the "defense or indemnity" that a policy provides.

Next, the OECAA declares an insurer's duty to "pay all costs" but does so with specific reference to the defense or indemnity costs owed under that policy. At ORS 465.480(3) (a), the statute provides:

> "An insurer with a duty to pay *defense or indemnity costs*, or both, to an insured for an environmental claim under a general liability insurance policy that provides that the insurer has a duty to pay all sums arising out of a risk covered by the policy, must pay all *defense or indemnity*

*costs*, or both, proximately arising out of the risk pursuant to the applicable terms of its policy, including its limit of liability, independent and unaffected by other insurance that may provide coverage for the same claim."

(Emphases added.) Thus, contrary to Continental's argument, the "all costs" language is not written so broadly as to contemplate an insurer's statutory liability for later attorney fees owed for delayed settlement under ORS 742.061; instead, the "all costs" language refers to an insurer's duty to pay an insured's defense costs and to indemnify the insured for damages that the insured owes.

It is certainly true that the OECAA allows an insured to choose to sue fewer than all insurers with coverage and that the targeted insurer may not refuse payment because other insurers with coverage have not paid. ORS 465.480 (3)(b).[2] Presumably, the insured targets the insurer with the greatest coverage. That is because ORS 465.480(3)(b) requires the insured to choose that insurer based on the insurer's time on the risk, policy limits, and appropriate coverage. *Id.* Even when targeted, however, that insurer's exposure is limited by its policy. At ORS 465.480(3)(d), the statute assures that:

"An insurer chosen by an insured under paragraph (b) of this subsection may not be required to pay defense or indemnity costs in excess of the applicable policy limits, if any, on such defense or indemnity costs, including any exclusions to coverage."

The statute gives that reassurance in terms of what the insurer owes as "defense or indemnity costs" under its policy, and that reference to "defense or indemnity costs" further indicates that the costs to be paid and reallocated, as we shall see, are the defense and indemnity costs promised in the policy.

It is also true that the targeted insurer who has paid part or all of an environmental claim may seek contribution

---

[2] In relevant part, ORS 465.480(3)(b) provides:

"If *** the insured files suit on the claim against less than all the insurers, the insured may choose which of the general liability insurance policies respond to the loss if not all are required to satisfy the insured's claim. *** [A]n insurer that has an obligation to pay may not fail to make payment to the insured on the grounds that another insurer has not made payment, unless the insurer has no obligation to respond to a claim until the limits of the underlying policy have been paid."

from other insurers who provide coverage to the insured. As noted above, ORS 465.480(4)(a) provides:

> "An insurer that has paid all or part of an *environmental claim* may seek contribution from any other insurer that is liable or potentially liable to the insured and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim."

(Emphasis added.) That provision, of course, must be read in context. What the targeted insurer has paid is an "environmental claim," and, as defined in ORS 465.475(1), an "environmental claim" is a "claim for defense or indemnity" under a policy. Later attorney fees for failure to settle within six months of a claim are not awarded under terms of a policy but instead are awarded under the separate statutory authority of ORS 742.061.

Next, we recognize that the legislature used a synonymous phrase when referring to apportioning "recoverable costs" between insurers. In relevant part, ORS 465.480(5) provides:

> "If a court determines that the apportionment of *recoverable costs* between insurers is appropriate, the court shall allocate the *covered damages* between the insurers before the court, based on the following factors:
>
> "(a)   The total period of time that each solvent insurer issued a general liability insurance policy to the insured ***;
>
> "(b)   The policy limits, including any exclusions to coverage, of each of the general liability insurance policies ***;
>
> "(c)   The policy that provides the most appropriate type of coverage for the type of environmental claim;
>
> "(d)   The terms of the policies that related to the equitable allocation between insurers ***."

(Emphases added.) When that provision speaks of "apportionment of recoverable costs" and "allocating covered damages," the provision is using the phrases interchangeably. As written, the phrase "recoverable costs" is synonymous with "covered damages." To apportion "recoverable costs" *is* to allocate "covered damages." What is "covered" by a

policy, as indicated throughout the OECAA, is the insurer's promise of "defense or indemnity" under a general liability insurance policy. *See* ORS 465.475(1) (definition of an "environmental claim"); ORS 465.480(3)(a) ("duty to pay defense or indemnity costs"); ORS 465.480(3)(d) (shall not pay more than limits of "defense or indemnity costs").

Our consideration of a provision's context includes related provisions and, here especially, words within the same sentence. "It is a familiar rule that the meaning of words in a statute may be clarified or confirmed by other words in the same sentence or provision." *Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016) (referring to the canon of *noscitur a sociis*). This is not an occasion in which to invoke the canon that, when the legislature uses different words, the legislature intends a different meaning. *See Marshall v. PricewaterhouseCoopers, LLP*, 371 Or 536, 555-56, 539 P3d 766 (2023) (recognizing that such "rules" of interpretation are mere assumptions that "always" give way to better evidence of legislative intent). Rather, this is an occasion in which the legislature used "recoverable costs" synonymously with "covered damages" while elsewhere using "defense or indemnity costs" to mean what is covered.

Taken together, text and context indicate that the term "recoverable costs" to be allocated under ORS 465.480(5) are the "covered damages"—that is, the "defense or indemnity costs"—that are covered under the terms of the several insurers' general liability policies. Because attorney fees awarded under ORS 742.061 are awarded independently under authority of a statute, not an insurer's policy, they are not "recoverable costs" subject to reallocation in contribution.

That is a logical and not absurd construction of the statute. *See Kupillas v. Sage and Social LLC*, 337 Or App 67, 77, 563 P3d 394 (2024), *rev den*, 373 Or 444 (2025) ("Avoiding absurd results is a maxim of statutory construction that courts use when the statute is truly ambiguous *and* the result is truly absurd." (Emphasis in original; internal quotation marks omitted.)). As the trial court recognized, underlying coverage cases may be as different as the different reasons insurers may deny or delay defense or indemnity. In

the prior case, Continental and nonparty insurer Wausau happened to share the opinion that the rates of California counsel were not necessary and reasonable. However, litigation on one insurer's policy may turn on facts, promises, limits, or exclusions that differ from other, nonparty insurers on their coverage. The reasons one insurer delays payment and incurs liability under ORS 742.061 may be unique.

Consequently, the legislature could sensibly choose to provide for allocation of "recoverable costs" when they are a shared liability for "covered damages" under applicable policies. The legislature could sensibly choose to leave statutory liability under ORS 742.061 to the litigating insurer that chose not to settle within six months of proof of a claim—particularly the leading insurer with the most coverage. The risk of solo liability under ORS 742.061 would pressure that insurer to promptly settle rather than litigate in hopes of later shifting attorney fees from its coverage litigation off to nonparty insurers in contribution.

Moreover, the legislature enacted no statutory provision to empower the trial judge to redefine "recoverable costs" on a case-by-case basis so as to decide what added expenses, beyond shared policy coverage, are subject to reallocation to other insurers. Continental's appeal to a general sense of purpose is ungrounded and contrary to the statute's specific language.

We have previously rejected allocation of statutory attorney fees in a contribution claim.[3] In *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 245 Or App 101, 260 P3d 830 (2011), the plaintiff insurers asserted a contribution claim against defendant insurers that arose out of their insured's underlying environmental cleanup action. We agreed with the defendant insurers' arguments that an attorney fee award under ORS 742.061 is not the

---

[3] We appreciate that ORS 465.480(4)(d) provides:

"Contribution rights by and among insurers under this section preempt all common law contribution rights, if any, by and between insurers for environmental claims."

However, no provision of the OECAA preempts the principle that it is the shared obligation for defense and indemnity that is subject to contribution. Rather, the terms of ORS 465.475(1) and ORS 465.480(3) and (5) confirm the principle of a shared obligation.

type of common liability among insurers that gives rise to equitable contribution—at least in the posture of that case. 245 Or App at 107. We observed that the plaintiff insurers' liability for attorney fees under ORS 742.061 did not arise out of a contractual obligation shared with other insurers; "rather, the liability is statutory and *** is not a liability that plaintiffs and defendants have ever shared." *Id.* at 109. We held that the trial court had not erred in granting summary judgment for the defendant insurers. *Id.*

Here, the attorney fees awarded to Schnitzer against Continental under ORS 742.061 were awarded for Continental's failure to settle or to pay Schnitzer within six months of a proof of claim against Continental, and that liability for attorney fees was not attributable to conduct by Wausau. Continental is obligated to pay the fees for its own resistance to Schnitzer's federal claim on the Continental policy. By reason of precedent and statutory construction, we conclude that the trial court erred in including Continental's obligation for attorney fees under ORS 742.061 in the contribution calculation.[4]

A reasonable, dissenting opinion reaches a different conclusion. We are unpersuaded for reasons that need no repetition. Yet, three particular responses are necessary.

First, in *Continental Casualty II*, the Supreme Court did *not* make an "interpretation of 'environmental claim'," 351 Or App at 337, 341 (Kamins, J., dissenting), that implies that Continental's newly incurred obligation for attorney fees under ORS 742.061 in the federal action is recoverable in contribution. The Supreme Court did not interpret the scope of the contribution right nor the meaning of "recoverable costs" in ORS 465.480(4)(a) and (5). Rather, the Supreme Court recognized that Schnitzer had an environmental claim, as everyone agreed, and held that Wausau's settlement did not bar Continental's contribution suit. 373 Or at 404. If the Supreme Court had interpreted an "environmental claim" for purposes of "recoverable costs," there would have been no need to remand the case for us to determine whether statutory attorney fees under ORS 742.061 in the contribution

---

[4] We add that the particular prejudgment interest on attorney fees awarded under ORS 742.061 is also not subject to allocation.

action were "recoverable costs," or, that is, "*covered* damages" under ORS 465.480(5). (Emphasis added.)

Second, the dissenting opinion dismisses *Certain Underwriters*, where, in its context, we held that attorney fees under ORS 742.061 in the contribution suit were not the sort of common liability among insurers that is recoverable in contribution. The dissent underscores our incidental acknowledgement that OECAA preempts common law. *See* 351 Or App at 312 n3. The salient point, however, is that *Certain Underwriters* was a decision *under the OECAA*, and the statutory terms—environmental claim, recoverable costs, and covered damages—were the same statutory terms that governed then and now.

Third, the dissent offers an alternative analysis in which "recoverable costs" and "covered damages" are interpreted to mean two different things, rather than two different ways to say the same thing, in ORS 465.480(5). 351 Or App at 341-45 (Kamins, J., dissenting). As discussed, a court *can* understand terms to be synonymous. The dissent, however, reads "recoverable costs" to be a broader term than "covered damages," thereby allowing "recoverable costs" to include statutory attorney fees in the contribution action, whereas "covered damages" would not. The problem with the dissent's construction is that it makes the statutory factors for apportioning contribution applicable only to "covered damages" and not to "recoverable costs." The result is that the supposedly larger term, "recoverable costs," would not be governed by consideration of time on the risk, type of coverages, policy limits, policy terms, or other factors that might have had a great deal to do with generating a multitude of disputes. A reasonable construction requires reading "recoverable costs" and "covered damages" synonymously and, as the same things, all subject to the factors for apportioning contribution.

B.  *Prejudgment Interest Under ORS 82.010*

In the prior action on Continental's policy, the federal court awarded Schnitzer $2,812,185 in prejudgment interest on the unpaid portion of the bills of the California defense counsel. In this contribution claim, the trial court included that prejudgment interest among "recoverable costs" to be apportioned among insurers.

Generally, prejudgment interest for breach of contract is imposed under ORS 82.010(1), which provides in relevant part:

"The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

"(a)   All moneys after they become due[.]"

We have recognized that prejudgment interest

"begins to run when (1) the exact amount of damages is either ascertained or readily ascertainable; and (2) the time from which the interest runs is easily ascertained."

*Cascade Corp. v. American Home Assurance Co.*, 206 Or App 1, 15, 135 P3d 450 (2006), *rev dismissed*, 342 Or 645 (2007) (internal quotation marks omitted). When those conditions are satisfied, an insurer owes prejudgment interest on unpaid bills to defend the insured. *See id.* (holding that the trial court erred in denying the insured recovery of prejudgment interest).

Although the determination of the amount of prejudgment interest was a matter of elaborate calculation by an accountant testifying for Schnitzer, as well as a jury's determination of when prejudgment interest began to run, Wausau does not claim here that the unpaid defense bills were not readily ascertainable or that the time from which interest would run cannot be ascertained. Wausau's only argument is that prejudgment interest should not be included in "recoverable costs" under ORS 465.480(5). Continental disagrees.

So do we. The duty to defend the insured is one of the shared duties of insurers with coverage, be they Continental or Wausau. Accordingly, sums due on unpaid bills defending the insured are likewise within the scope of "covered damages" or "recoverable costs" under ORS 465.480(5). *See generally Cascade Corp.*, 206 Or App at 15-16 (prejudgment interest on unpaid fees).[5] Therefore, we conclude that the

---

[5] Because prejudgment interest is a matter of statute, ORS 82.010(1), the dissenting opinion views our conclusion as inconsistent with our treatment of attorney fees under ORS 742.061. 351 Or App at 341 n 2 (Kamins, J., dissenting). There is no inconsistency. The difference is that the duty to defend is an insurer's

trial court did not err in apportioning prejudgment interest among the insurers for purposes of contribution.

## III.   THIRD ISSUE

Did the trial court err in determining that the community-rate limitation on attorney fees of independent counsel, provided in ORS 465.483(3)(a), was not applicable to Schnitzer's California counsel?

A.   *Prior Case*

Wausau's third assignment turns on the dispute in the prior case over the unpaid portion of the attorney bills of the California firm that defended Schnitzer. That was a dispute about whether Continental should have paid the rates of attorneys charging more than local attorneys. We recount the facts of that case—those which are not now contested—in order to explain how the dispute here becomes a question of statutory construction.

When agencies identified the Schnitzer entities as potentially responsible parties in 1999 and 2000, Stoel Rives, a Portland law firm, was retained to defend Schnitzer. In 2001, Continental, Wausau, and other insurers reached a temporary agreement to share those defense costs. In 2003, however, Stoel Rives advised that it was unable to continue representation due to professional standards involving a conflict of interest. Continental proposed a different Portland attorney and firm and, if they were not acceptable to Schnitzer, then an alternate Portland attorney and firm.

Schnitzer responded that it was not satisfied that either local counsel had the same experience as Stoel Rives and that such experience was necessary for Superfund litigation. Schnitzer reported that it had chosen the California firm of Bingham McCutchen "for outside counsel." After much disagreement, Continental and other insurers eventually

---

obligation under a policy and is within the meaning of "recoverable costs," *i.e.* "*covered* damages" within the scope of contribution under ORS 465.480(5). (Emphasis added.) When failing to timely pay defense fees in the underlying claim of the injured parties, an insurer becomes obligated for prejudgment interest as part and parcel of the original defense fees. Later arising attorney fees resulting from resisting an environmental claim of the insured under ORS 742.061 are not under a policy and are not the same as prejudgment interest, for the reasons previously explained.

acquiesced in Schnitzer's choice of California counsel, but the insurers insisted that they would only pay attorney fees comparable to local attorneys' rates, and Schnitzer insisted that it reserved its rights to seek payment for defense work at full rates later.

In 2010, Schnitzer filed the prior claim against Continental over delays and short payment of the defense bills. In a pretrial ruling, made before the effective date of ORS 465.483(3), Magistrate Judge Papak determined that, because an insurer has a duty to defend and use reasonable care, an insured may recover attorney fees based on rates higher than those within the litigation's locale, if the insured can show it to be necessary to retain outside counsel. *Schnitzer Steel Industries, Inc. v. Continental Cas. Co.*, CV 3:10-1174-PK, 2012 WL 3879276 at *16-18 (D Or Mar 9, 2012). Judge Mosman adopted that ruling. *Schnitzer Steel Industries, Inc. v. Continental Cas. Co.*, No 3:10-cv-01174-PK, 2012 WL 3879250 (D Or Sep 5, 2012).

Before the case went to trial, the Oregon legislature passed Senate Bill (SB) 814 in early 2013. Or Laws 2013, ch 350, §§ 1-9. We will quote the terms of that legislation, now ORS 465.483, when we turn to examine its several provisions later. Among other things, the legislation created an insured's right to "independent counsel" in environmental claims in certain circumstances and addressed the rates of those attorney fees. Or Laws 2013, ch 350, § 7. Schnitzer considered the specifics of the legislation more favorable than the generality of the Papak ruling and filed a motion *in limine* on the issue; so did Continental. As it happened, however, Schnitzer had previously argued on a discovery issue that the California firm had a confidential relationship with insurers. Due to that argument, the federal court declared Schnitzer to be judicially estopped from asserting that the California firm was "independent counsel" within the meaning of the new statute, ORS 465.483(3).

When the case came to trial in 2014, the jury was instructed about nonlocal fees according to the terms of the Papak ruling in that case, not the terms of the new legislation. The jury was instructed that Schnitzer would be entitled to be repaid at rates higher than rates of local attorneys,

if no local counsel could reasonably have been expected to provide competent representation and a reasonable effort to find nonlocal counsel to work at local rates would not have succeeded. The jury found in favor of Schnitzer and awarded Schnitzer $8,601,700 in unpaid, nonlocal attorney fees to the date of that trial.

In this case, Wausau argued that the new ORS 465.483(3) limited the rates of "independent counsel" to the customary rates of local counsel. Wausau did so by way of a motion *in limine*, a motion to dismiss akin to ORCP 60, and a written closing argument. The trial court denied the motions, stating, "That's not what the statute says."

In its findings of fact and conclusions of law, the court recounted that the jury in the prior case had rejected Continental's argument that qualified local counsel were available and found that the higher rates of the California firm were reasonable. The trial court wrote:

> "Wausau argued that had Continental argued in the federal case that [Schnitzer's] lawyers were 'independent counsel' under ORS 465.483, this would have changed the result in the federal trial because the statute 'caps' rates for independent counsel at the prevailing rates in the community where the claim arose. This is a misreading of the statute, which requires independent counsel that is competent to handle the complexity of the claim, and also expressly states that out-of-forum counsel must be considered if there are no available local counsel competent to handle the claim. ORS 465.483(2). Given the jury found no local attorneys were available to represent [Schnitzer] competently, the application of this statute would not have changed the outcome."

Apparently, the trial court read ORS 465.483, not only to provide for nonlocal counsel in the absence of experienced local counsel, but to permit reimbursement at reasonable and necessary rates higher than the rates of attorneys in the litigation's locale. The trial court did not specifically indicate whether Schnitzer's California counsel should be considered as independent counsel, but the court did find that the fees of Bingham McCutchen were reasonable and necessary. The court concluded that Wausau owed in contribution its proportionate share of the full amount of attorney

fees of the California firm from April 28, 2010 to May 15, 2018.

On appeal, Wausau argues, in terms of the new statute, that the insurers had a duty to defend under their policies; that the California firm took over the defense of the environmental claims; that Schnitzer, not the insurers, chose the California firm in its belief that qualified local counsel was unavailable; and that the federal jury agreed. Wausau notes that, whatever unique reason precluded Schnitzer from arguing that Bingham McCutchen was "independent counsel," Wausau was not a party to the prior case and is not estopped here from insisting that the new ORS 465.483(3) applies to limit attorney fees of nonlocal "independent counsel."

Continental responds that the trial court independently determined that "under the circumstances the out-of-market rates charged by the Bingham firm and its successors were reasonably necessary for competent representation of [Schnitzer] at the PHSS." Continental asserts:

> "The statute does not contain a 'rate cap' that prevents insureds from obtaining covered defense costs from their insurers where those costs are reasonable and necessary to secure a competent defense, but greater than what Oregon lawyers typically charge."

That is so, claims Continental, because it would "mean little" if the insured had to pay the difference between local and nonlocal rates. In Continental's view, the statute's provision for competent counsel would be "illusory" if insureds must pay the difference in rates.

B.  *Independent Counsel*

We conclude that the statutory text is plain in its limitation on attorney fees, even if not so plain as to the new role of "independent counsel" who undertakes the complex role of defending the insured while interacting with the insurer on behalf of the insured, who still has a duty to cooperate with the insurer. To explain, we take the statute's subsections in turn.

The statute begins simply with the provision that triggers the right to "independent counsel" where an insurer who defends warns that coverage may be problematic. At subsection (1), ORS 465.483, the statute provides:

> "If the provisions of a general liability insurance policy impose a duty to defend upon an insurer, and the insurer has undertaken the defense of an environmental claim on behalf of an insured under a reservation of rights, or if the insured has potential liability for the environmental claim in excess of the limits of the general liability insurance policy, the insurer shall provide independent counsel *to defend the insured* who shall represent *only the insured and not the insurer.*"

(Emphases added.) Subsection (1) contains several features. First, it is the risk that an insured may have uninsured exposure that triggers the right to independent counsel. Second, independent counsel serves "to defend" against the environmental claim, not simply to serve as separate counsel to the insured on the potential problem of coverage. Third, independent counsel shall represent the insured, not the insurer—hence the term, "*independent* counsel." (Emphasis added.)

The role of independent counsel is a shift from the typical form of defense counsel provided by an insurer. Generally, "[w]hen an insured is represented by attorneys provided by the insurer, the insured relinquishes control over the defense of the claim, and a fiduciary relationship is created between the insured and insurer[.]" *FountainCourt Homeowners v. FountainCourt Develop.*, 360 Or 341, 354, 380 P3d 916 (2016). A tripartite relationship arises among the insurer who undertakes to defend, the attorney who is hired to defend, and the insured who has a duty to cooperate with the insurer in defense. *See OSB Formal Ethics Op No. 2005-121* (rev 2026) ("As a general proposition, a lawyer who represents an insured in an insurance defense case has two clients: the insurer and the insured.").[6] In that situation, the

---

[6] The ethics opinion posits that:

"Any assumption that a tripartite relationship exists can be overcome by the specific facts and circumstances in a particular matter. *See In re Weidner*, 310 Or 757, 801 P2d 828 (1990) (articulating the test for an attorney-client relationship); *Evraz Inc., N. A. v. Continental Ins. Co.*, Civ No

defense lawyer must treat the insured as the "primary client" whose protection must be the lawyer's "dominant" concern. *Id.*

Subsection (1) of ORS 465.483 makes the role of "independent counsel" different than typical insurance defense insofar as it provides that "independent counsel *** shall represent only the insured and not the insurer." Before concluding, however, subsection (4) of ORS 465.483 reassures that:

> "The provisions of this section do not relieve the insured of its duty to cooperate with the insurer under the terms of the insurance contract."

To avoid unintended change, subsection (4) preserves the insured's duty to cooperate with its insurer in the processing and defense of the claim. *Cf. Bailey v. Universal Underwriters Ins.*, 258 Or 201, 218-28, 474 P2d 746 (1970) (coverage lost due to breach of insured's duty to cooperate).

Because the insured must cooperate with the insurer, so too must "independent counsel," to the extent necessary to defend, seek payment of experts, and facilitate settlement before judgment. That is so because, as a practical matter, the insurer still retains control of its purse in paying experts or a settlement before judgment. Put another way, nothing in ORS 465.483 forbids "independent counsel" from periodic reporting and communicating confidentially with the client's insurer on behalf of the insured as necessary for trial strategy or pretrial settlement, presumably done within the confidentiality of "work product doctrine" of ORCP 36 B(3), if nothing else. In part, ORCP 36 B(3)(a) provides:

> "[A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection B(1) of this rule and *prepared in anticipation of litigation or for trial* by or for another party or by or *for that other party's representative* (including an *attorney*, consultant, surety, indemnitor, *insurer*, or agent) only on a showing that the

---

3:08-cv-00447-AC, 2013 WL 6174839 (D Or Nov 21, 2013) (finding no tripartite relationship when insurer did not hire lawyer and when lawyer had made it clear to insurer that she only represented insured)."

*OSB Formal Ethics Op No. 2005-121* at 2 n 1.

party seeking discovery has substantial need of the materials in the preparation of such party's case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the *mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*"

(Emphases added.) *See, e.g., Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 FRD 567, 572 (ED Cal 2002) (granting protective order against subpoenaed communications where independent counsel defended insured, because the policy imposed insured's duty to insurer and the commonality of interest meant privilege and work product doctrine were not waived).[7]

Subsection (2) of ORS 465.483 addresses the qualifications of independent counsel and the potential to retain counsel from elsewhere. Subsection (2) provides in part:

"(a)(A)   Independent counsel retained by the insurer to defend the insured under the provisions of this section must be experienced in handling the type and complexity of the environmental claim at issue.

"(B)   If independent counsel who meet the requirements specified in this paragraph are not available within the insured's community, then independent counsel from outside the insured's community who meet the requirements of this paragraph must be considered.

"* * * * *

"(c)   As used in this subsection, 'experienced' means an established environmental practice that includes substantial defense experience in the type and complexity of environmental claim at issue."

---

[7] We do not here determine the protection from disclosure that may be afforded communications of independent counsel with an insured's insurer. Rather, we note the potential for confidentiality insofar as the trial court in these circumstances is asked, after-the-fact, to determine whether Bingham McCutchen was independent counsel. We caution that the fact that the firm may have interacted with the insurer, in whatever way confidentially, may not foreclose a *post hoc* determination that the firm was independent counsel.

Subsection (2) resembles the pivotal jury instruction in the prior case concerning the need for "competent representation" and the reasonableness of seeking nonlocal counsel, but subsection (2) addresses the concern with more specificity. Subsection (2) requires that counsel have an "*established* environmental practice" and "*substantial* defense experience in the *type and complexity* of the environmental claim *at issue*." (Emphases added.)[8]

Paragraph (3)(a) of ORS 465.483 provides the limitation on the rates that are at issue here. That paragraph provides:

> "The obligation of the insurer to pay fees to independent counsel and environmental consultants is based on the regular and customary rates for the type and complexity of environmental claim at issue in the community where the underlying claim arose or is being defended."

The trial court seems to have read the fee limitation of paragraph (3)(a) only to apply to local counsel. We respectfully disagree. Subsection (1) provides generally the "obligation of the insurer" to provide independent counsel under specified circumstances, and that general obligation includes the specific circumstance in which subparagraph (2)(a)(B) requires consideration of nonlocal counsel when necessary to assure experienced independent counsel. The fee limitation in subsection (3) on the "obligation of the insurer" applies to all of ORS 465.483. To say that the obligation "is based" on regular and customary rates of attorneys in the community where the claim is litigated is a polite way of saying that the obligation is *to pay* at the community rate. Therefore, the statute *does* contain a limitation on attorney fees of

---

[8] Testimony before legislative committees stressed the concern for an insured's right to experienced, independent counsel, including consideration of nonlocal counsel when qualified local counsel is unavailable. Joan Snyder of Stoel Rives, who had been Schnitzer's defense attorney in the early years of the claim, was the leading witness expressing this concern and explaining the bill to legislative committees. Audio Recording, Senate Committee on General Government, Consumer and Small Business Protection, SB 814, Mar 22, 2013, at 23:60-24:09, https://olis.oregonlegislature.gov (accessed Mar 13, 2026); Testimony, Senate Committee on General Government, Consumer and Small Business Protection, SB 814, Mar 22, 2013 (written statement of Joan Snyder); Audio Recording, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013, at 13:00-24:12, https://olis.oregonlegislature.gov (accessed Mar 13, 2026).

independent counsel, whether local or nonlocal. Accordingly, the trial court erred when construing ORS 465.483 to provide no limitation on nonlocal attorney fees.

It is not clear from the trial court's findings, however, whether the trial court took the step to determine if California counsel was serving as independent counsel after the statute took effect.[9] Wausau urges us to do so. Considering the earmarks of independent counsel in ORS 465.483, there appears to be no dispute on this record that Continental undertook the defense of Schnitzer; that Continental issued a reservation of rights or warned of a potential shortfall of coverage; that Schnitzer rejected counsel proffered by insurers; that Schnitzer did so based on concerns about the experience of local counsel to defend complex environmental claims; that Schnitzer chose Bingham McCutchen as "outside counsel"; and that California counsel qualified as "experienced." Also, there appears to be no dispute for purposes of this case as against Continental—a party here and in the prior case—about the adverse effect of the jury's determination about the reasonableness and necessity of retaining Bingham McCutchen as nonlocal, competent counsel.[10]

Nevertheless, it remains the task for the trial court to determine in the first instance whether Bingham McCutchen served, in substantial form, as independent counsel as we have described that role, or instead served as traditional insurance defense counsel.[11] Also, the trial court should address in the first instance the effect of the statute's limitation on fees incurred before the statute became

---

[9] Because Wausau was not a party in the prior case, Wausau was not bound by the federal court's determination that Schnitzer was estopped from asserting that California counsel was independent counsel.

[10] The trial court indicated in colloquy on cross-motions for summary judgment that the insurers here are not in a position to "second-guess the jury verdict."

[11] By "substantial form," we recognize that the statute prescribes what "independent counsel" should be. That prescriptive perspective looks forward. Here, however, the court is given the task to look backward to characterize the role of counsel retained before ORS 465.483 was enacted. We recognize the challenge of a retrospective characterization, particularly where the original relationship was created before and continued after, enactment of the statute, however imperfectly and in whatever form.

effective on June 10, 2013.[12] Therefore, we remand to the trial court to make those determinations.

## IV.   FOURTH ISSUE

Did the trial court err in concluding that certain Wausau policies did not contain aggregate liability limits and so should be included in the calculations for contribution?

Wausau's fourth assignment of error challenges the trial court's granting of Continental's motion for partial summary judgment on the availability of Wausau's 1965-70 policies for inclusion in the contribution calculations. In opposition to the motion, Wausau had contended that the policies had "aggregate limits" and that those limits had been exhausted by Wausau's previous indemnity settlement payment of $400,000 to Schnitzer. Wausau contended that those policies should not be counted for contribution. After reviewing those policies, we agree with Continental that the policies did not contain an applicable aggregate limit and that the trial court did not err in granting its motion for summary judgment.

Each of those Wausau policies issued to Schnitzer included a potential "aggregate limit" of $100,000 under its "Limits of Liability" with respect to property damage for operations pertaining to the appropriate policy periods. The later policies (1967-70), akin to the earlier policies (1965-67), described their aggregate limit with these terms:

"[T]he total liability of the company for all damages because of property damage to which this coverage applies *** shall not exceed the limit of property damage liability stated in the schedule as 'aggregate':

"1.   all property damage arising out of premises or opera-tions *rated on a remuneration basis*[.]"

(Boldface omitted; emphasis added.) Read carefully, the aggregate limit was one that applied to property damage arising out of operations "rated on a remuneration basis." The parties agree that the question whether an aggregate

---

[12] Or Laws 2013, ch 350, §§ 7-9 (Section 7 added ORS 465.483; section 8 applied section 7 to environmental claims arising before, on or after the effective date of the act; section 9 provided the effective date of the act is its passage, June 10, 2013).

limit governs property damage from operations depends on whether the operations were rated on a "remuneration basis," and the parties further agree that "remuneration" means payroll.

There is no dispute that the declarations pages provide one column that describes the "premium bases" for "operations and premises" with several printed options, but the form instead stated in manuscript form, in typewritten capital letters, that the premium base was "ESTIMATED SALES," not remuneration (*i.e.*, payroll). The next column on the page pertains to "Rates" for property damage liability with several printed options, but the form instead stated again in capital letters "PER $1000," reflecting that the rates were determined for estimated sales per $1,000 in sales.

Wausau contends that the declarations' statement of the premium base was not dispositive. Wausau argues that the calculation of premiums and the rating of risks are different things. Assuming that there was no rating of risks in the declarations, Wausau says that policy terms require reference to Wausau manuals. A retired Wausau underwriter had declared that Wausau's practice, according to its manuals, was to develop a composite premium in which the rating for operations *was* remuneration. Wausau concludes that the declarations' purported silence on rating and a reference to manuals together should mean that the policies' aggregate limits applied.

Continental responded, and the trial court agreed, that the aggregate limit provisions were not applicable, because the aggregate limits applied only when the risk of loss was rated on a remuneration basis, and the policies plainly stated premiums and rates that were rated based on estimated sales, not remuneration. Because that was so, the trial court explained, there was no need for reference to the manuals.

We review the trial court's ruling on summary judgment for whether there is a genuine issue of material fact and whether Continental was entitled to judgment as a matter of law. ORCP 47 C; *Lewis v. Carson Oil Company*, 204

Or App 99, 101, 127 P3d 1207, *rev den*, 341 Or 245 (2006). The interpretation of an insurance policy is a question of law to be decided by the court. *Allianz Global Risks v. ACE Property & Casualty Ins. Co.*, 367 Or 711, 734, 483 P3d 1124 (2021), *adh'd to as modified on recons*, 368 Or 229, 489 P3d 115 (2021). Contracts of insurance are to be construed according to the plain meaning of the terms and conditions of the policy, according to the "four-corners" rule, which excludes consideration of evidence outside the "four corners" of the policy itself. *Id.* (citing *West Hills Development Co. v. Chartis Claims*, 360 Or 650, 653, 385 P3d 1053 (2016)); ORS 742.016(1).

We understand the policies as did the trial court. The earlier policies (1965-67), like the later policies (1967-70), provided that the aggregate limits apply to claims arising out of injury "caused by the ownership, maintenance, or use of the premises or operations *rated on a remuneration premium basis*[.]" (Emphasis added.) The declarations stated that the premium basis was to be estimated sales and the declarations *further* provided that the *rates* for that determination would be "per $1,000" of sales. It is true that the policies contained a potential reference to the manuals, but they did so stating,

> "The premium bases and rates for hazards described in the declarations are stated *therein*. Premium bases and rates for hazards *not so described* are those applicable in accordance with the manuals in use by the company."

(Emphases added.) Because the declarations *did* state the bases for premiums *and* rating—that is, estimated sales *and* per $1,000, the declarations were *not* silent. Therefore, as Continental contends, it was not necessary or appropriate for the trial court to consider Wausau's manuals or its practice of rating on remuneration. The trial court did not err in finding that those policies lacked an aggregate limit, were not exhausted by the payments made, and were properly included in the contribution calculation.

## V.   FIFTH ISSUE

> Did the trial court err in determining that Wausau had failed to prove that aggregate indemnity limits had been reached on its Northwest Pipe policies?

In its fifth assignment, Wausau contends that the trial court erred in finding, after trial, that Wausau's two policies from 1983 to 1985 for Schnitzer's tenant, Northwest Pipe—policies in which Schnitzer was an additional insured—were not exhausted by a December 2014 settlement, as well as prior indemnity payments by Wausau for Northwest Pipe. The settlement agreement between Wausau and Northwest Pipe stated:

> "Northwest Pipe and Wausau agree that the above [$500,000] payment shall fully and finally exhaust the limits of the Wausau policies, such that Wausau shall have no further obligations of defense, indemnity, or any further obligations of any kind under the Wausau policies with regard to these or any other claims. Northwest Pipe and Wausau further agree that the payment is final and nonrefundable. $80,236.59 of the settlement is allocable through indemnity and exhausts the remaining indemnity limits of the Wausau policies."

In the Northwest Pipe case, the federal court had granted a motion from Wausau for entry of a good-faith finding on the settlement and a contribution bar under ORS 465.480(4).

At trial, Wausau presented the settlement agreement and the testimony of the claims adjuster who had signed the agreement and explained its contents. He also explained a spreadsheet document, which he identified as a "loss run." It had been prepared by Wausau's financial office at his request based on payment records, and it reflected payments made by Wausau on the Northwest Pipe policy claims. The document identified by code the type of payment on a claim such as a defense cost, an indemnity cost, or a litigation cost.

The adjuster testified that he understood the statutes that applied to the differentiation of payments as indemnity or defense and that he applied that understanding in determining the code to be applied to each payment made by Wausau to Northwest Pipe. He explained that he would review an invoice on a claim and authorize payment in a particular amount and under a particular payment code, whereupon staff would issue the check. He testified that the insurer maintained a payment record in an

electronic database like a checkbook and that a report could be issued for payments made on a policy. He testified that he had requested the loss-run document on the Northwest Pipe policies and that payments with the code 531-1 reflected indemnity payments. The adjuster testified that the two policies issued to Northwest Pipe each had aggregate limits of $100,000, and that, between indemnity payments made on the policies, as reflected on the loss-run document, and the indemnity payment of $80,236.59 made under the settlement agreement, Wausau's payments to Northwest Pipe under the policies exceeded aggregate limits. Continental did not present any contrary evidence or argue that the payments were not, in fact, made for indemnity.

The trial court concluded that Wausau had not proven its limits were exhausted. The court stated that, although Wausau's adjuster testified that Wausau had paid Northwest Pipe $200,000 that it described as indemnity, "Wausau presented no evidence to allow the Court to determine what payments to Northwest Pipe were for indemnity, and specifically how the approximately $80,000 payment to Northwest Pipe in connection with [the settlement agreement] reimbursed Northwest Pipe for indemnity payments it made."

Wausau argues that the trial court erred as a matter of law, because the uncontroverted evidence required the finding that the policies had been exhausted.

Continental responds that Wausau's evidence was "limited and conclusory" and failed to describe *why* the payments should be considered as indemnity payments. Continental argues that the trial court was entitled to disbelieve the claims adjuster's testimony although it had not been challenged in any way.

We review the trial court's findings to determine whether they are supported by any evidence in the record, *Vukanovich v. Kine*, 268 Or App 623, 633, 342 P3d 1075, *adh'd to as modified on recons*, 271 Or App 133, 349 P3d 567 (2015), viewing the evidence, "as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess[ing]

whether, when so viewed, the record was legally sufficient to permit that outcome." *Wilson v. Gutierrez*, 261 Or App 410, 411, 323 P3d 974 (2014) (internal quotation marks and citation omitted).

We are unable to conclude that the record is legally sufficient to support the trial court's adverse determination as to Wausau's payments for indemnity. The trial court did not explain how it found the evidence to be insufficient; and the court did not find that the witness lacked credibility. Instead, the court appeared to state that, without more detail or corroboration, it could not confirm that the payments were indeed for indemnity. Be that as it may, the court could not avoid the indemnity evidence before it.

Wausau put on uncontroverted testimony and documentation that Wausau had treated the payments as indemnity at the time they were made, and Continental did not dispute or disagree with that evidence. Further, the settlement agreement reflected that the indemnity limit had been reached, and Continental did not challenge that evidence, either.

In the trial court, Continental's question on cross-examination of Wausau's adjuster had been whether the adjuster recalled that, in earlier litigation with Northwest Pipe, a judge had denied Wausau's motion for partial summary judgment that, "as a matter of undisputed fact," the Wausau policy limits had been exhausted. The adjuster did not recall. Continental does not pose the question as an argument on appeal, and that is no oversight. The denial of summary judgment in April 2014 predated the Northwest Pipe settlement agreement in December 2014—not to mention its statement agreeing that the indemnity limits had been exhausted.[13] On appeal, Continental inveighs that the court's finding of a good-faith settlement in the earlier Northwest Pipe litigation did not actually decide whether limits had been exhausted. Be that as it may, that distinction does not draw into question the adjuster's testimony or documentation.

---

[13] *Northwest Pipe Co. v. RLI Ins. Co.*, No 3:09-CV-01126-BR, 2014 WL 1406595 at *10 (D Or Apr 10, 2014) (denying motion in part because no judgment or settlement had occurred yet).

In this case, Wausau's evidence amounted to a *prima facie* showing that the settlement payments were for indemnity, and there was no evidence to dispute that showing. As a result, the record does not support the trial court's determination contrary to Wausau's characterization of the payments as indemnity. Consequently, we conclude that the trial court erred in finding that Wausau had failed to establish that the aggregate limits on Northwest Pipe's policies had been exhausted. Those policies should not have been included in the contribution calculation.

## VI.  CONCLUSION

The complexity of the trial court's task has been substantial, and this review does not tell the breadth of that court's careful work. That said, we conclude that the trial court erred in including Continental's attorney fee obligation under ORS 742.061 in the allocation of "covered damages." The trial court did not err in considering prejudgment interest in that allocation. The trial court erred in determining that the cap on attorney fees in ORS 465.483(3)(a) would make no difference in limiting the fees of nonlocal counsel. On remand, the trial court should determine whether, in substantial form, California counsel served as "independent counsel" and, if so, calculate the impact of the community-rate cap on fees, when it became applicable. The trial court did not err in including, as without aggregate limits, certain Wausau 1965-70 policies in the contribution calculation. The court did err in including Wausau's policies on Northwest Pipe in the contribution calculation. On remand, the trial court should reconsider the allocation for contribution among the insurers accordingly.

Reversed in part; affirmed in part; and remanded for reconsideration of allocation.

**KAMINS, P. J.,** dissenting.

I concur with the majority's decision in every respect except for its conclusion that the trial court erred in including the federal environmental claim attorney fees as "recoverable costs" to be allocated under ORS 465.480(5). The majority reaches that conclusion because, in its view, the text and context of ORS 465.480(5) limit the term

"recoverable costs" to only "defense or indemnity costs" that are covered under the terms of the insurers' general liability policies. Because the federal environmental claim attorney fees are awarded under ORS 742.061 rather than an insurer's policy, the majority reasons that they are not subject to reallocation in a contribution action.

In my view, the text and context of the relevant provisions of the Oregon Environmental Cleanup Assistance Act (OECAA) indicate that the legislature intended to include within the scope of the contribution right attorney fees awarded to the insured under ORS 742.061 because those fees are a necessary and foreseeable cost paid on the environmental claim. Here, where Wausau and Continental were both responsible for the defense costs; argued for the same position as to what those costs should be in communications with Schnitzer; and Schnitzer targeted Continental under a provision of the OECAA to successfully recover costs in the federal action beyond what Wausau and Continental decided to pay, the trial court did not err in allocating the federal environmental claim attorney fees in the contribution action. Therefore, I respectfully dissent.

## I.   BACKGROUND

The key difference between the majority's view of the facts and mine is that Continental did not just "happen[]] to share" the same position as "nonparty insurer Wausau" in the federal environmental claim. 351 Or App at 312. Rather, both insurers fought together vigorously for years in support of that position but, because and only because of the OECAA, Continental was required to sit alone in defense of that shared position in the federal court action. In those circumstances, because the OECAA was designed to compensate a targeted insurer for costs it bore solely because it was the targeted insurer under the OECAA, Continental was entitled to contribution for all of those costs, including attorney fees under ORS 742.061.

A little background helps clarify the extent of the insurers' "shared position." Continental and Wausau, along with a third insurer, Century, issued comprehensive general liability policies to Schnitzer. After the Environmental

Protection Agency identified Schnitzer as a potentially responsible party for contamination of the Portland Harbor Superfund Site, Schnitzer tendered its legal defense to its insurers. Those insurers, including Continental and Wausau, "in an attempt to agree on a method for sharing the costs of defense," "coordinated their efforts to determine the reasonable hourly rates to pay Schnitzer's defense counsel." The insurers entered into a cost-sharing agreement where Continental would pay 70 percent of the defense costs incurred, Wausau would pay 20 percent, and Century would pay 10 percent.

In 2003, the Portland law firm that had been defending Schnitzer determined that it could no longer continue the representation due to a conflict of interest. Schnitzer selected a Los Angeles-based firm to represent it after concluding that there were no suitable local firms. The insurers, including Wausau and Continental, collectively objected because the rates charged by the Los Angeles firm were much higher than Oregon firms, and argued that local qualified counsel was available. Ultimately, Schnitzer retained the Los Angeles firm and the insurers agreed to reimburse Schnitzer at the lower hourly rate charged by the Oregon firms, with Schnitzer reserving the right to seek complete reimbursement from all insurers, including Wausau, at a later date.

Between approximately 2003 to 2014, Continental, Wausau, and Century generally paid Schnitzer's defense costs at the reduced hourly rates, splitting the bills as set out in the cost-sharing agreement. In 2010, Schnitzer filed a federal action to recover past defense costs at the Los Angeles firm's full rates, as well as future defense costs based on those rates. As noted, leading up to the federal action, Schnitzer's coverage disputes involved all three insurers. However, in the federal action, rather than filing a claim against all three insurers, Schnitzer targeted Continental under the provision of the OECAA that authorizes an insured to choose one of its general liability policies to respond to the entire loss if not all policies are required to satisfy the insured's claim. ORS 465.480(3)(b). Thus, under that provision, Schnitzer sought *all* of its unpaid defense

costs from Continental and a declaration that Continental would pay 100 percent of Schnitzer's defense costs going forward, subject to its policy limits. Thus, Schnitzer sought reimbursement for Wausau's payment at the reduced rates via a federal lawsuit from Continental alone, not Wausau.

In that federal action, Continental took the same position that it and the other insurers, including Wausau, had taken when Schnitzer first retained the Los Angeles firm—that it was not required to pay the Los Angeles firm's higher rates because less expensive local counsel was available and qualified. A jury found in favor of Schnitzer, determining that Schnitzer had been justified in hiring the Los Angeles firm and that the firm's higher rates were reasonable under the circumstances. The district court awarded Schnitzer a judgment in the amount of $8.6 million, which represented all of the unpaid defense costs up to that point. The district court also awarded Schnitzer $3,756,037 in attorney fees under ORS 742.061 and $2,812,185 in prejudgment interest under ORS 82.010. ORS 742.061 (providing for attorney fees as costs in an action after an insurer's failure to settle or pay within six months of a proof of claim); ORS 82.010 (providing for the accrual of prejudgment interest).

Continental satisfied the federal judgment and subsequently brought this contribution action against its co-insurers, including Wausau. ORS 465.480(3)(b) (if the insured files suit against one insurer, the targeted insurer has a right to contribution under ORS 465.480(4) from all other insurers whose policies are triggered); ORS 465.480(4)(a) ("An insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim.").

Below, Wausau argued, among other things, that the federal environmental claim attorney fees that Continental paid to Schnitzer under ORS 742.061 are not subject to allocation as "recoverable costs" under ORS 465.480(5) because "recoverable costs," for purposes of that statute, include only defense or indemnity costs. *See* ORS 465.480(5) ("[i]f a court determines that the apportionment of recoverable costs

between insurers is appropriate, the court shall allocate the covered damages between the insurers" based on certain factors). The trial court rejected that argument, reasoning that when the legislature enacted the OECAA, "it was certainly aware of an insured's ability to recover attorney fees under ORS 742.061," and thus the legislature intended those fees to be "recoverable costs" subject to apportionment under ORS 465.480(5). The trial court indicated that whether the federal environmental claim attorney fees should be allocated in a contribution action is a matter of discretion and depends on circumstances such as the "conduct of the defendant insurer in the underlying litigation." The court found that Wausau shared Continental's position in the federal case that the Los Angeles firm's rates were too high and thus concluded that the environmental-claim-litigation attorney fees should be included as "'recoverable costs' subject to equitable apportionment among insurers who have duties to defend [Schnitzer]."

## II. ANALYSIS

With that background in mind, I turn to my disagreement with the majority's conclusion that Continental was not entitled to contribution from Wausau for the attorney fees that Continental paid to Schnitzer in the federal action. Determining the scope of a targeted insurer's contribution rights under the OECAA is a question of statutory construction. In construing a statute, we "begin with a review of the statute's text and context because they are the best evidence of the legislature's intent *** [and] consider relevant legislative history or statutory development, when helpful." *Progressive Universal Ins. Co. v. Voyles*, 337 Or App 381, 387, 563 P3d 371, *rev den*, 373 Or 736 (2025) (citation omitted).

### A. *Overview of Relevant Statutes*

The relevant provisions that refer to and govern the right to contribution include ORS 465.480(3)(b), ORS 465.480(4)(a), and ORS 465.480(5). ORS 465.480(3)(b) allows an insured with multiple policies to target one insurer to respond to the entire loss if not all are required to satisfy the insured's claim and provides that the targeted insurer has

a right to contribution from other insurers whose policies are triggered. That statute provides that "[i]f the insured's claim is not fully satisfied and the insured *files suit on the claim* against less than all the insurers," the insured may choose which of the policies respond to the loss. (Emphasis added.) The next sentence provides that the "insured or the insurers have a right to contribution [under ORS 465.480(4)] from all other insurers whose policies are triggered." Thus, by its plain terms, that provision contemplates a suit filed by an insured against a targeted insurer—a suit in which that targeted insurer may be liable for attorney fees under ORS 742.061—and refers to the targeted insurer's right to contribution in that context.

Turning to ORS 465.480(4)(a), that statute provides that "[a]n insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim." The term "environmental claim" is defined in ORS 465.475(1) as "a claim for defense or indemnity submitted under a general liability insurance policy by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water."

As construed by the Supreme Court, the first clause of ORS 465.480(4)(a) "permit[s] an insurer that has paid 'all or part of *an* environmental claim' to seek contribution, and, in barring contribution if there has been a settlement 'regarding *the* environmental claim,' the second use of the term should be understood to refer to the environmental claim that has been paid." *Continental Casualty Co. v. Argonaut Ins. Co.*, 373 Or 389, 401-02, 567 P3d 1059 (2025) (*Continental Casualty II*) (emphases in original). In other words, an environmental claim, for purposes of ORS 465.480(4)(a), is an insured's claim for defense or indemnity costs that has been paid by the targeted insurer, including a claim that has been reduced to judgment and recovered on.

Finally, ORS 465.480(5) directs a court who has "determine[d] that the apportionment of recoverable costs

between insurers is appropriate" to "allocate the covered damages between the insurers" based on certain factors, such as time on the risk, policy limits, and type of coverage under the policies. That is, when a targeted insurer who has paid an environmental claim and brings a contribution action under ORS 465.480(4)(a) against other insurers whose policies have been triggered, the court must determine which costs or "covered damages" the insurer is entitled to recover and allocate those costs according to the mandatory factors.

B.   *"Environmental Claim" for Purposes of ORS 465.480 (4)(a)*

To summarize, under the OECAA, an insured with multiple policies can sue one targeted insurer for an environmental claim—defense or indemnity costs covered under those policies—and after the targeted insurer has paid that environmental claim, which has been reduced to a judgment as a result of litigation, the targeted insurer is authorized to seek contribution from other liable or potentially liable insurers for the environmental claim that it has paid. The OECAA does not define the scope of the contribution right. However, in my view, for purposes of ORS 465.480(4)(a), which is the operative statute that authorizes a targeted insurer to seek contribution, the "environmental claim" that the insurer has paid and may seek contribution for includes the necessary and foreseeable costs (including an attorney fee judgment) that the targeted insurer has paid to the insured on that claim. I reach that conclusion based on the context of ORS 465.480(4)(a), including the reference to the contribution right in ORS 465.480(3)(b), the Supreme Court's interpretation of "environmental claim" in ORS 465.480(4)(a), and the express purpose of the OECAA.

First, as noted, ORS 465.480(3)(b) refers to the contribution right in the context of an insured targeting one insurer—*i.e.*, bringing its environmental claim against that insurer in a lawsuit. Presuming that the legislature was aware that the insured would be entitled to statutory attorney fees and interest in a lawsuit that it brought to enforce the targeted insurer's defense obligation, that context suggests that the legislature intended those costs to be

recoverable in a contribution action. *See Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 691, 318 P3d 735 (2014) (for purposes of statutory interpretation, "[w]e presume that the legislature was aware of existing law").

Second, the Supreme Court interpreted the term "environmental claim" in ORS 465.480(4)(a) to include all or part of a claim for defense or indemnity costs that the targeted insurer paid to the insured after the insured's claim was reduced to a judgment in a coverage-litigation suit—specifically here, the federal environmental claim. *Continental Casualty II*, 373 Or at 403 (holding that an insurer that has paid all or part of an environmental claim, including a claim for defense costs reduced to a judgment, has a right to contribution for those costs from other non-settling insurers). That interpretation, in combination with the legislature's reference to the contribution right in the context of an insured bringing an environmental claim against a targeted insurer, indicates that the legislature intended to encompass necessary costs paid to the insured on the environmental claim—such as attorney fees and prejudgment interest—within the targeted insurer's right to contribution.

Third, the express purpose of the OECAA, which is to "promot[e] the fair and efficient resolution of environmental claims" in order to address the "many insurance coverage disputes involving insureds who face potential liability for their ownership of roles at polluted sites in this state," indicates that the legislature intended the contribution right to include costs directly associated with the environmental claim. *See* ORS 465.478 (legislative findings); *see also Sundermier v. PERS*, 269 Or App 586, 595, 344 P3d 1142, *rev den*, 357 Or 415 (2015) ("Statements of statutory policy are also considered useful context for interpreting a statute.").

Specifically, the OECAA promotes efficiency "by permitting an insured to target one among multiple insurers for payment of all or part of an environmental claim," and by encouraging settlement of environmental claims. *Continental Casualty II* 373 Or at 402-03 (pointing to legislative history showing that the legislature intended ORS

465.480(4)(a) to encourage settlement of environmental claims). And the OECAA promotes fairness by permitting "a targeted insurer that has borne more than its share of the cost of the environmental claim" to bring an action for contribution. *Id*. at 403.

The context of those legislative goals indicates that the legislature intended to include within the scope of the contribution right the necessary and foreseeable costs paid by a targeted insurer to the insured on an environmental claim. That interpretation promotes both fairness to the targeted insurer and efficiency by encouraging a non-targeted insurer with a shared obligation under its policy to settle with the insured. By contrast, allowing a non-settling insurer to receive a windfall by virtue of not being targeted by the insured in a lawsuit directly contravenes those legislative goals. Absent the targeting provision in the OECAA, Wausau would have been a defendant in the federal action. Thus, in my view, under the OECAA, Continental is entitled to contribution from Wausau for the costs Continental paid to Schnitzer on the environmental claim, including attorney fees and interest.

In the majority's view, the text and context of ORS 465.480(5) indicate that the terms "recoverable costs" and "covered damages" refer to defense or indemnity costs that are covered under the terms of the several insurers' general liability policies, and because attorney fees under ORS 742.061 are awarded independently under a statute rather than an insurer's policy, they are not "recoverable costs" subject to allocation in a contribution action.[1] 351 Or App at 310-11. To support that conclusion, the majority points to references in the OECAA to "defense or indemnity costs" paid under a policy. *See* ORS 465.475(1) (defining

---

[1] The majority also relies on *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 245 Or App 101, 260 P3d 830 (2011), in which we rejected allocation of statutory attorney fees in a contribution claim. As the majority acknowledges, however, under ORS 465.480(4)(d), which was enacted after *Certain Underwriters*, "[c]ontribution rights by and among insurers under this section preempt all common law contribution rights, if any, by and between insurers for environmental claims." 351 Or App at 312 n3; Or Laws 2013, ch 350, § 4. Thus, the scope of an insurer's contribution rights is purely a statutory question, and, as discussed, the text and context of the OECAA indicate that the legislature intended to include within the scope of the contribution right attorney fees awarded to an insured under ORS 742.061.

"environmental claim" as a "claim for defense or indemnity submitted under a general liability insurance policy"); ORS 465.480(3)(a) (requiring an insurer with a duty to pay "defense or indemnity costs" under a policy that provides that the insurer must pay all sums, to pay all "defense or indemnity costs" regardless of other insurance that may provide coverage for the same claim); ORS 465.480(3)(d) (providing that a targeted insurer "may not be required to pay defense or indemnity costs in excess of the applicable policy limits"); 351 Or App at 307-09. That context, in the majority's view, indicates that "environmental claim" in ORS 465.480(4)(a), and "recoverable costs" and "covered damages" in ORS 465.480(5) refer only to the defense and indemnity costs promised in the policy.

In my view, the majority's conclusion is inconsistent with the context of the OECAA. First, the provisions that the majority relies on for the proposition that the contribution right is limited to defense or indemnity costs covered under a policy do not govern or even refer to the contribution right. Rather, the references to "defense or indemnity costs" in those provisions are in the context of the insurer's duties under the policies.

By contrast, ORS 465.480(3)(b), which expressly refers to the contribution right, does so in the context of a lawsuit brought by the insured against the targeted insurer. In determining what the legislature intended the scope of the contribution right to be, a provision that specifically references the contribution right provides more relevant context in which to make that determination than provisions that do not reference the contribution right. And as discussed above, ORS 465.480(3)(b)'s reference to a targeted insurer's right to contribution in the context of a lawsuit brought by the insured—a lawsuit that may expose the targeted insurer to attorney fees under ORS 742.061—indicates that the legislature intended to include in the scope of the contribution right the necessary costs associated with the lawsuit.

Second, the Supreme Court's interpretation of "environmental claim" in ORS 465.480(4)(a) to include a judgment paid by the targeted insurer suggests a broader

meaning of that term that would include not just defense and indemnity costs covered under the policy, but also the necessary and foreseeable costs that the targeted insurer paid to the insured on the claim. In the appeal of this case, the Supreme Court determined that the federal claim that Schnitzer brought against Continental under the OECAA and the ensuing judgment that Continental paid to Schnitzer was an "environmental claim" for purposes of Continental's right to contribution under the OECAA. *Continental Casualty II*, 373 Or at 401. In other words, the "environmental claim" was not just the costs owed under the policy but was the federal litigation that resulted in a judgment against Continental. Accordingly, under that interpretation, the "recoverable costs" and "covered damages" subject to allocation under ORS 465.480(5) would include attorney fees and prejudgment interest paid to the insured as part of the environmental claim—here, the federal claim brought under the OECAA—notwithstanding the fact that those costs are awarded under separate statutes and not the insurer's policy.[2]

Third, as discussed above, the purpose of the OECAA is to promote the fair and efficient resolution of environmental claims and to encourage settlement. As discussed above, the limitation that the majority places on the contribution right is inconsistent with that purpose because it would reward a non-settling insurer who shared the same obligations as the targeted insurer. Thus, I conclude that the more consistent and equitable interpretation of the relevant provisions of the OECAA indicate that an "environmental claim" for purposes of the contribution right includes the necessary and foreseeable costs paid by the targeted insurer to the insured.

---

[2] Although prejudgment interest is awarded under a separate statute, the majority concludes that because the "duty to defend the insured is one of the shared duties of insurers with coverage, * * * sums due on unpaid bills defending the insured are likewise within the scope of 'covered damages' or 'recoverable costs' under ORS 465.480(5)." 351 Or App at 315-16. That conclusion, in my view, is inconsistent with the majority's conclusion that attorney fees awarded under ORS 742.061 are not within the scope of the contribution right. Both prejudgment interest and attorney fees arise out of the insurers' shared duties because they are incurred in enforcing the insured's right to unpaid defense costs covered under a policy.

C.   *Alternatively, "recoverable costs" are not limited to "defense or indemnity costs" owed under the policy.*

Alternatively, if the majority is correct that "environmental claim" for purposes of the contribution right under ORS 465.480(4)(a) includes only defense and indemnity costs covered under the policy, the legislature's use of "recoverable costs" in ORS 465.480(5) provides an alternative construction of the OECAA that would permit a trial court to include attorney fees awarded to the insured under ORS 742.061 as costs to be allocated in a contribution action.

That statute provides that "[i]f a court determines that the apportionment of *recoverable costs* between insurers is appropriate, the court shall allocate the *covered damages* between the insurers before the court," based on certain factors. (Emphases added.) Adhering to the principle that when the legislature uses different terms, we generally assume that it intends different meanings for those terms, it is significant that the legislature used "recoverable costs" in the first clause and "covered damages" in the second clause. *See State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) ("If the legislature uses different terms in statutes, we generally will assume that the legislature intends different meanings for those terms." (Internal quotation marks omitted.)).

In the first clause, the statute refers to "recoverable costs" in the context of the costs that a court determines are appropriate to apportion between insurers. In the second clause, the statute directs the trial court to allocate "covered damages" between the insurers based on certain mandatory factors. Assuming, as we "generally" do, that the legislature intended those terms to have different meanings, "recoverable costs" refers to the broad category of costs that a court has discretion to determine is appropriate to apportion between insurers, and "covered damages" refers to a specific subset of those costs that the legislature intended to be allocated based on mandatory factors.[3] *Id*. Had the

---

[3] In my view, under this alternative construction of ORS 465.480(5), the statute's reference to a trial court's "determin[ation] that the apportionment of recoverable costs between insurers is *appropriate*," suggests that the legislature intended to grant the court discretion to not only determine that certain costs that are not "covered damages" are "recoverable," but also to deviate from the mandatory factors in allocating those costs if appropriate. (Emphasis added.)

legislature intended for only "covered damages" to be allocated in a contribution action, it would have used "covered damages" in both clauses.

The majority justifies reading different terms in the same sentences to mean the same thing through the proposition that rules of interpretation, including the rule that when the legislature uses different words, we assume it intends those words to mean different things, "are mere assumptions that 'always' give way to better evidence of legislative intent." 351 Or App at 311; *see Marshall v. PricewaterhouseCoopers, LLP*, 371 Or 536, 555-56, 539 P3d 766 (2023) (rejecting plaintiffs' argument that because the legislature used different terms in the same statute it intended different meanings because "the text and legislative history supply more direct evidence" of the legislature's intent). I am not persuaded that there is "better" or "more direct" evidence of legislative intent that overcomes the assumption that the legislature's use of different terms—"recoverable costs" and "covered damages"—indicates that the legislature intended those terms to have different meanings. To begin with, as the majority notes, we are not aware of any legislative history that sheds light on what the legislature intended when it used "recoverable costs" in ORS 465.480(5). Thus, the majority's conclusion that "recoverable costs" and "covered damages" mean the same thing—notwithstanding the general assumption that when the legislature uses different words it intends those words to have different meanings—rests on the proposition that there is "better" evidence that the legislature intended those terms to mean the same thing, and that "better evidence" is the context of ORS 465.480(5) that indicates that "covered damages" are defense or indemnity costs.

In my view, the context of the statute supports the opposite conclusion—that the term "recoverable costs" is not synonymous with "covered damages" and thus does not refer only to "defense or indemnity costs." First, none of the relevant statutes expressly limit an insurer's contribution rights to "defense or indemnity costs." *See, e.g., Blacknall v. Board of Parole*, 348 Or 131, 140-41, 229 P3d 595 (2010) (legislative silence can be an indicator of policy choices). I begin

with ORS 465.480(3)(b), which, as noted, provides that "[i]f the insured's claim is not fully satisfied and the insured files suit on the claim against less than all the insurers," the insured may target one insurer, and that insurer has a right to contribution [under ORS 465.480(4)]. Notably, the statute does not expressly provide that insurers have a "right to contribution *for defense or indemnity costs*." Thus, the statute contemplates a lawsuit brought by an insured against a targeted insurer and provides that the targeted insurer has a "right to contribution" for the costs incurred due to its being targeted from other insurers whose policies are triggered, and the statute does not expressly limit the scope of that "right to contribution" to defense or indemnity costs.

Similarly, ORS 465.480(4)(a) provides that "[a]n insurer that has paid all or part of an environmental claim may seek contribution from any other" non-settling insurer, but it does not expressly provide that an insurer "may seek contribution *for defense or indemnity costs*." And although it references an "environmental claim," which is defined as "defense or indemnity" costs, it does so for the purpose of prescribing *who* may seek contribution, not for the purpose of limiting the scope of the costs an insurer may seek from other insurers in a contribution action. ORS 465.475(1) (defining environmental claim).

That subsection is followed by subsection (5), which, as discussed above, refers to the trial court's "determin[ation] that the apportionment of recoverable costs between insurers is appropriate" and directs the court to allocate "covered damages" based on certain mandatory factors. Again, similar to every other provision in the OECAA that governs or refers to contribution rights, that provision does not expressly limit allocation to "defense or indemnity costs." Rather, it refers to "recoverable costs" and then narrows that term to "covered damages." Thus, the absence of an express limitation on the scope of a targeted insurer's contribution rights indicates that the legislature did not intend to restrict "recoverable costs" to just defense or indemnity costs and not any of the costs *associated* with defense or indemnity.

Second, the stated purpose of the OECAA, which, as noted, is to "promot[e] the fair and efficient resolution

of environmental claims," provides additional context that supports the contention that "recoverable costs" are not limited to just defense or indemnity costs. ORS 465.478. As discussed above, in the context of that express purpose, allowing a targeted insurer to broadly recover the costs it paid to the insured in litigating the insured's claim—including attorney fees and prejudgment interest—is consistent with that purpose.

### III.   CONCLUSION

In sum, I construe "environmental claim" for purposes of the contribution right to include attorney fees and prejudgment interest paid to the insured by the targeted insurer, or, alternatively, that the term "recoverable costs" in ORS 465.480(5) refers to a broader category of costs than defense or indemnity costs covered under a policy. And under the circumstances here, where both Wausau and Continental underpaid on the environmental claim (Schnitzer's defense costs); Wausau shared Continental's position in the federal environmental claim targeting Continental that the insurers should not be required to reimburse Schnitzer at the higher rates; and Continental paid the entire claim as the targeted insurer, including fees and interest, after Schnitzer prevailed in the federal environmental claim, the trial court did not err in allocating the attorney fees in the federal action. Thus, I respectfully dissent.